IN THE CIRCUIT COURT FOR WICOMICO COUNTY, MARYLAND

| | |
|---|---|
| BARRY WERNER<br>11206 Channel Road<br>Atlantic, VA 23303<br><br>and<br><br>SUSAN D. WERNER<br>11206 Channel Road<br>Atlantic, VA 23303<br><br>  Plaintiffs<br><br>v.<br><br>EXACTECH, INC.<br>2320 NW 66th Court<br>Gainesville, FL 32653<br><br>Serve On:<br><br>  Corporation Service Company<br>  1201 Hays Street<br>  Tallahassee, FL 32301-2525<br><br>and<br><br>EXACTECH US, INC.<br>2320 NW 66th Court<br>Gainesville, FL 32653<br><br>Serve On:<br><br>  Corporation Service Company<br>  1201 Hays Street<br>  Tallahassee, FL 32301-2525<br><br>  Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:  Case No.: C-22-CV-23-000112<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

COMES NOW the Plaintiffs, Barry Werner and Susan D. Werner, by and through the undersigned counsel, and bring this action against the Defendants, Exactech, Inc. and Exactech US, Inc., and allege as follows:

1

I. Jurisdiction and Venue

1. That this Honorable Court has jurisdiction over the subject matter and the parties pursuant to Md. Code, Cts. & Jud. Proc. §6-103, and venue is proper pursuant to Md. Code, Cts. & Jud. Proc. §6-201.

II. Parties

2. That the Plaintiff, Barry Werner (hereinafter referred to as "Mr. Werner"), is an adult resident of Atlantic, Accomack County, Virginia.

3. That the Plaintiff, Susan D. Werner (hereinafter referred to as "Mrs. Werner"), is an adult resident of Atlantic, Accomack County, Virginia.

4. That upon information and belief, the Defendant, Exactech, Inc., is a corporation with a principal office in Gainesville, Alachua County, Florida that regularly conducts business in and around Maryland including Wicomico County, Maryland.

5. That upon information and belief, the Defendant, Exactech US, Inc., is a corporation with a principal office in Gainesville, Alachua County, Florida that regularly conducts business in and around Maryland including Wicomico County, Maryland.

III. Facts

6. That on or about June 14, 2017, Mr. Werner was the recipient of a total left knee replacement surgery at Deer Pointe Surgical Center in Salisbury, Wicomico County, Maryland.

7. That Pasquele Patrera, M.D. performed the surgery.

8. That Exactech knee devices were used in the operation.

9. That the Exactech knee replacement devices used in the operation included:

a. Optetrak Logic Femoral Component Posterior Stabilized, Cemented, Size 5, Left, Serial Number 4396992, Ref. 02-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;

      b. Optetrak Logic PSC Tibial Insert, Posterior Stabilized, Size 5, 9mm, Serial Number 4476589, Ref. 02-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;

      c. Optetrak Logic Fit Tibial Tray Cemented, Size 5F/5T, Serial Number 4789345, Ref. 02-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;

      d. Optetrak 3-Peg Patella Cemented, 35 mm Diameter, Serial Number 4894839, Ref. 200-02-35.

10. That thereafter, Mr. Werner did rehabilitation therapy.

11. That painful symptoms in Mr. Werner's left knee persisted.

12. That at a visit with a physician's assistant at Peninsula Orthopedic Associates on July 20, 2017, Mr. Werner noted a pain level of 4 of 10. He had increased knee swelling after physical therapy sessions.

13. That at a follow up visit with Dr. Petrera on August 25, 2017, he noted his pain level at 3 of 10. Diffuse mild swelling was noted.

14. That at a visit with Dr. Petrera on August 24, 2018, Mr. Werner noted intermittent pain in his left knee. He had been taking anti-inflammatory medication. He was still having pain and difficulty achieving full flexion. He still had swelling. X-rays were taken which revealed well positioned knee replacement – no evidence of loosening or lucency. He did not have full range of motion.

15. That on October 17, 2018, Dr. Petrera performed a left knee manipulation under anesthesia. Mr. Werner tolerated the procedure well.

16. That Mr. Werner did additional therapy after the manipulation in October, November, and December of 2018.

17. That at a visit with a physician's assistant on November 1, 2018, mild diffuse swelling was noted.

18. That in November, 2019, Mr. Werner returned to see Dr. Petrera. At the visit on November 15, 2019, his symptoms were noted to have worsened since the last visit. The pain was constant. He was still taking anti-inflammatory medication and doing home exercises. He was having instability and was having episodes of his knee giving way. X-rays were taken and there was no evidence of abnormality.

19. That at a follow up visit on November 22, 2019, lab results from tests that had been taken revealed no sign of infection.

20. That at a visit with Dr. Petrera on April 7, 2020, Mr. Werner's symptoms had worsened. Again, x-rays taken showed no signs of loosening or lucency. At that visit, Dr. Petrera had a lengthy conversation with Mr. Werner and explained to him that his results with the knee replacement devices showed an unacceptable failure rate at 2% at 46 months and that this may be the early manifestation of accelerated poly-wear.

21. That at another visit with Dr. Petrera on February 5, 2021, Mr. Werner was still experiencing pain with the Exectech Logic knee replacement and "he [has] never been happy with it." On exam, there was effusion with some boggy swelling of the knee. At that visit, Dr. Petrera informed Mr. Werner that he had experience with early catastrophic failures of the knee [devices] and Dr. Petrera let Mr. Werner know that Exactech had sent engineers up to evaluate Dr. Petrera's results. Dr. Petrera explained that the history was the same – the knees have never done well from the get go and he was confident this knee was one of the failed polyetheline knees. X-rays were taken and no abnormalities were noted. At that visit, Dr. Petrera referred Mr. Werner to Tariq Nayfeh, M.D. to consider a revision.

22. That at a visit with Dr. Nayfeh on March 23, 2021, Mr. Werner received an aspiration of the left knee and yellow synovia fluid was aspirated. It was described to Mr. Werner as plastic deteriorating within the knee component.

23. That on June 28, 2021, Dr. Nayfeh performed a revision of the left total knee replacement at Holy Cross Germantown Hospital.

24. That Dr. Neyfah's notes indicate he had observed multiple Exactech knee replacements with failure of the polyethylene at an early state. He found premature wearing of the medial and lateral weightbearing surfaces of the tibial implant. He discovered a large amount of blood-tinged synovial fluid and synovitis expressed. He also found that the femoral implant had debonded from its cement. Dr. Neyfah's post-op diagnosis was mechanical loosening of internal left knee prosthetic join, and polyetheline wear of left knee joint prosthesis.

25. That thereafter, Mr. Werner did therapy and he has had follow up visits with Dr. Neyfah. At a visit in December, 2021, Mr. Werner noted continued soreness and swelling in his left knee. At a visit in December of 2022, Mr. Werner noted the inability to walk long distances without stopping and resting.

26. That on or about August 17, 2022, Dr. Petrera sent Mr. Werner a letter. The letter indicated that Exactech had recently issued a recall on one component and insert of the knee replacement device Mr. Werner received in the 2017 operation.

27. That Exactech's recall related to the polyethylene inserts used in knee devices. The devices were packaged in out-of-specification vacuum bags that are oxygen resistant but do not contain secondary oxygen of ethylene vinyl alcohol.

28. In a 2022 letter to surgeons[1], Exactech wrote that:

---

[1] See https://www.exac.com/wp-content/uploads/2022/04/Exactech-DHCP-letter.4.6.2022.pdf

5

The use of these non-conforming bags may enable increased oxygen diffusion to the UHMWPE (ultra-high molecular weight polyethylene) insert, resulting in increased oxidation of the material relative to inserts packaged with the specified additional oxygen barrier layer. Over time, oxidation can severely degrade the mechanical properties of conventional UHMWPE, which, in conjunction with other surgical factors, can lead to both accelerated wear debris production and bone loss, and/or component fatigue cracking/fracture, all leading to corrective revision surgery.

29. That the FDA classified the Defendants' recall as a class II recall in that the product may cause temporary or medically reversable health consequences.

30. That upon information and belief, Exactech US, Inc. is a wholly owned subsidiary of Exactech, Inc.

31. That upon information and belief, Exactech US, Inc. is engaged in designing, developing, testing, assembling, manufacturing, packaging, labeling, preparing, distributing, marketing, supplying, warranting, selling Exactech products including Optetrak products in the United States.

32. That the first Optetrak knee device was introduced in 1994.

33. That at all times relevant hereto, the Defendants designed, developed, tested, assembled, manufactured, packaged, labeled, prepared, distributed, marketed, supplied, warranted, and sold the Optetrak Comprehensive Total Knee System throughout the United States.

34. That the Defendants received approval for the Optetrak Total Knee System in 2010.

35. That a 2012 study found that Optetrak's total knee system performed poorly.[2]

---

[2] See Thelu, C., et al, *Poor results of the Optetrak™ cemented posterior stabilized knee prosthesis after a mean 25-month follow-up: Analysis of 110 prostheses*, Orthopedics and Traumatology 2012; 98:413-420. Abstract found at https://pubmed.ncbi.nlm.nih.gov/22613936/. See also, https://www.sciencedirect.com/science/article/pii/S1877056812000758?via%3Dihub

36. That studies in the Australian Orthopaedic Association's National Joint Replacement Registry, Hip Knee & Shoulder Arthroplasty 2016 Annual Report found a high rate of early revisions with respect to Optetrak knee devices.[3]

37. That Exactech's letter to surgeons referenced above also mentioned that the New Zealand Registry reported significantly higher revision rates for Optetrak knee systems compared to other knee systems.

38. That another study has found that "[t]he use of the Optetrak Logic PS TKA femoral component was associated with early aseptic loosening and increased presence and severity of backside burnishing with early cement-implant interface debonding compared with other commercially available types of PS TKA femoral components. The earlier failure rate with this implant is of concern."[4]

## IV. Claims

### Count I
### (Negligence)

39. That Mr. Werner incorporates each and every allegation as set forth in paragraphs 1 through 38 above.

40. That Defendants had actual or constructive knowledge of the high rate of failures associated with Optetrak knee devices compared to other manufacturer's devices.

---

[3] https://aoanjrr.sahmri.com/documents/10180/275066/Hip%2C%20Knee%20%26%20Shoulder%20Arthroplasty.

[4] See Malahias, M-A, et al, *Early Aseptic Loosening with Increased Presence and Severity of Backside Burnishing in the Optetrak Logic Posterior-Stabilized Total Knee Arthroplasty Femoral Component*, Thieme, Journal on Knee Surgery, April 30, 2021, J Knee Surg 2022; 35(14): 1595-1603; abstract at https://pubmed.ncbi.nlm.nih.gov/33930899/

41. That Defendants had actual or constructive knowledge of the high rate of early revisions associated with Optetrak knee devices compared to other manufacturer's devices.

42. That Defendants had actual or constructive knowledge of the hazards and dangers associated with the Optetrak knee devices.

43. That Defendants had a duty to exercise reasonable care in the design, development, formulation, manufacture, packaging, labeling, marketing, sale, and distribution of the Optetrak knee replacement devices.

44. That the Defendants had a duty to warn physicians, patients, and customers of the higher rate of early failures, early revisions, injuries, and risks associated with the Optetrak knee replacement devices.

45. That the Defendants failed to exercise reasonable care in the design, development, formulation, manufacture, packaging, labeling, marketing, sale, and distribution of the Optetrak knee replacement devices in breach of their duty.

46. That despite the aforementioned actual or constructive knowledge of the high rate of early failures, early revisions, injuries, dangers and hazards associated with the Optetrak knee replacement devices, the Defendants continued to manufacture, package, label, market, sell and distribute the Optetrak knee devices in breach of their duty.

47. That despite the aforementioned actual or constructive knowledge of the high rate of early failures, early revisions, injuries, dangers and hazards associated with the Optetrak knee replacement devices, the Defendants did not warn doctors, patients, and consumers of the dangers and risks associated with the knee replacement devices in breach of their duty.

48. That as a proximate result of the Defendants' breaches of duty, Ms. Werner suffers and will continue in the future to suffer from injuries including, but not limited to,

physical and mental pain, suffering, mental anguish, scarring, disfigurement, limited mobility, instability, loss of consortium and inconvenience.

49. That as a foreseeable and proximate result of the Defendants' breaches of duty, Ms. Werner has and will continue to incur medical expenses and other incidental expenses.

50. That as a foreseeable and proximate result of the Defendants' breaches of duty, Mr. Werner has and will continue to incur lost wages, income and lost business opportunities.

51. That Mr. Werner was not contributory negligent, nor did he assume the risk of the injuries and damages sustained.

WHEREFORE, the Plaintiff, Barry Werner, prays for judgment against the Defendants, Exactech, Inc. and Exactech US, Inc., jointly and severally, in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), the reasonable costs and expenses of this action, interest, and such other relief as the Court deems proper.

Count II
(Breach of Express Warranty)

52. That Mr. Werner incorporates each and every allegation as set forth in paragraphs 1 through 51 above.

53. That the Defendants expressly warranted that the Optetrak knee replacement devices were safe and effective devices for patients who required total knee replacement surgery.

54. That Optetrak knee replacement devices that were manufactured, packaged, labeled, sold, and distributed, including the devices used in Mr. Werner's operation, did not meet these express representations and warranties because they failed early, caused early revisions and caused injuries to patients.

55. That the Optetrak devices, including the devices used in Mr. Werner's operation, were not fit for their intended use.

56. That the Defendants had actual or constructive knowledge that their representations were false and/or misleading.

57. That the Defendants breached their expressed warranties with regard to the Optetrak knee replacement devices.

58. That as a proximate cause of the breached express warranties, Mr. Werner suffered the injuries and damages described herein.

WHEREFORE, the Plaintiff, Barry Werner, prays for judgment against the Defendants, Exactech, Inc. and Exactech US, Inc., jointly and severally, in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), the reasonable costs and expenses of this action, interest, and such other relief as the Court deems proper.

Count III
(Breach of Implied Warranty)

59. That Mr. Werner incorporates each and every allegation as set forth in paragraphs 1 through 58 above.

60. That there is a requirement in Maryland that products being sold work as they should when used normally. See Md. Code, Commercial Law, §2-314.

61. That Md. Code, Commercial Law, §2-314 includes provisions indicating that goods should be "fit for the ordinary purposes for which such goods are used…" and good "[a]re adequately contained, packaged, and labeled as the agreement may require…."

62. That there were implied warranties that the Defendants' Optetrak knee replacement devices were safe for ordinary use.

63. That by manufacturing, packaging, labeling, selling and distributing the subject knee replacement devices that failed early and caused early revisions, including the knee

replacement devices used in Mr. Werner's operation, the Defendants breached implied warranties.

64. That as a proximate cause of the Defendants' breaches of implied warranties, Mr. Werner suffered and continues to suffer from the injuries and damages described herein.

WHEREFORE, the Plaintiff, Barry Werner, prays for judgment against the Defendants, Exactech, Inc. and Exactech US, Inc., jointly and severally, in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), the reasonable costs and expenses of this action, interest, and such other relief as the Court deems proper.

Count IV<br>(Strict Liability)

65. That Mr. Werner incorporates each and every allegation as set forth in paragraphs 1 through 64 above.

66. That the Optetrak knee replacement devices, including the devices used in Mr. Werner's operation, were in defective condition.

67. That the Optetrak knee devices, including the devices used in Mr. Werner's operation, were unreasonably dangerous.

68. That the defects associated with the Optetrak knee devices, including the devices used in Mr. Werner's operation, cause injury.

69. That the Optetrak knee devices were expected to reach and did reach patients including Mr. Werner without substantial changes in their condition.

70. That Mr. Werner suffered the injuries and damages described herein as a foreseeable and proximate result of the knee implant devices referenced herein.

WHEREFORE, the Plaintiff, Barry Werner, prays for judgment against the Defendants, Exactech, Inc. and Exactech US, Inc., jointly and severally, in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), the reasonable costs and expenses of this action, interest, and such other relief as the Court deems proper.

### Count V
### (Loss of Consortium)

71. That Mr. Werner incorporates each and every allegation set forth in paragraphs 1 through 70 of this Complaint.

72. That Mr. Werner and Mrs. Werner are married.

73. That as a proximate cause of the above-referenced conduct of the Defendants, Mr. and Mrs. Werner were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society and affection, to the detriment of their marital relationship.

WHEREFORE, the Plaintiff, Barry Werner, prays for judgment against the Defendants, Exactech, Inc. and Exactech US, Inc., jointly and severally, in the amount of Seventy-Five Thousand Dollars ($75,000.00), the reasonable costs and expenses of this action, interest, and such other relief as the Court deems proper.

### Count VI
### (Loss of Consortium)

74. That Mrs. Werner incorporates each and every allegation set forth in paragraphs 1 through 73 of this Complaint.

75. That Mr. Werner and Mrs. Werner are married.

76. That as a proximate cause of the above-referenced conduct of the Defendants, Mr. and Mrs. Werner were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society and affection, to the detriment of their marital relationship.

WHEREFORE, the Plaintiff, Susan D. Werner, prays for judgment against the Defendants, Exactech, Inc. and Exactech US, Inc., jointly and severally, in the amount of Seventy-Five Thousand Dollars ($75,000.00), the reasonable costs and expenses of this action, interest, and such other relief as the Court deems proper.

Respectfully Submitted,

_____
Edward F. Simon
CFP No.: 1206200228
Edward F. Simon, LLC
P.O. Box 4284
Annapolis, MD 21403
(410) 562-0669
(410) 571-3997 (fax)
edsimon.law@gmail.com
Counsel for Mr. and Mrs. Werner

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Complaint does not contain any restricted information.

_____
Edward F. Simon

## JURY DEMAND

COMES NOW the Plaintiffs, Barry Werner and Susan D. Werner, by and through the undersigned counsel, and pray for a jury trial on the issues presented in their Complaint.

_____
Edward F. Simon